1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HARLEY S. BRIDGEMAN, JR.,

11          Plaintiff,                    No. 2:10-cv-01457 JAM KJN PS

12      v.

13   UNITED STATES OF AMERICA,
     FREMONT BANK, TD SERVICE
14   COMPANY, FEDERAL NATIONAL
     MORTGAGE ASSOCIATION and
15   DOES 1-200,
                                          ORDER and
16          Defendants.                   FINDINGS AND RECOMMENDATIONS
     _____/

17

18          Presently before the court[1] are: (1) a motion to dismiss plaintiff's First Amended

19   Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant T.D. Service

20   Company (Dkt. No. 21); (2) a motion to dismiss plaintiff's First Amended Complaint pursuant to

21   Federal Rule of Civil Procedure 12(b)(6) filed by defendants Fremont Bank and Federal National

22   Mortgage Association (Dkt. No. 25); and (3) a "motion to dismiss" plaintiff's First Amended

23   Complaint pursuant to Federal Rules of Civil Procedure 12(h)(3) and 12(c) filed by defendant

24   United States of America (Dkt. No. 56).  Although styled a "motion to dismiss," the motion filed

25   _____

26          [1]  This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1   by the United States of America ("United States") is more accurately characterized as a motion to

2   dismiss for lack of jurisdiction and a motion for judgment on the pleadings because the United

3   States already filed an answer to plaintiff's First Amended Complaint (Dkt. No. 24).[2]  See

4   Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980) (per curiam).

5          On November 18, 2010, the undesigned conducted a hearing on the motions to

6   dismiss filed by T.D. Service Company, Fremont Bank, and Federal National Mortgage

7   Association (collectively, the "Financial Defendants").  (Dkt. No. 66.)  The Financial Defendants

8   were represented by their respective counsel via telephone.  Plaintiff appeared in person and on

9   his own behalf.  Assistant United States Jason Ehrlinspiel appeared at the November 18th

10  hearing on behalf of the United States, and plaintiff's objection to the presence of Mr. Ehrlinspiel

11  at the hearing was noted on the record.  That objection is overruled because the United States had

12  a right to have its counsel present at the hearing on other parties' motions to dismiss, which was,

13  in any event, a public hearing.  The motion filed by the United States was set for hearing on

14  December 9, 2010, and the undersigned submitted that motion on the briefs and record in this

15  case (Dkt. No. 76).  See Fed. R. Civ. P. 78(b); E. Dist. Local Rule 230(g).  Having reviewed the

16  briefs and record in this case and having considered the parties' respective arguments, the

17  undersigned recommends that plaintiff's First Amended Complaint be dismissed with prejudice.

18  I.     BACKGROUND

19         A.     Factual Background

20         As explained below in the sub-section addressing the procedural history in this

21  case, plaintiff's First Amended Complaint (Dkt. No. 20) is the operative pleading in this action.

22  The factual allegations in the First Amended Complaint appear under "headers" that denote each

23

24         [2] Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early
    enough not to delay trial—a party may move for judgment on the pleadings."  To the extent that the
25  United States's motion is one for judgment on the pleadings, it is properly before this court because
    the pleadings are closed as to the United States.  See Whitson v. Bumbo, No. C 07-05597 MHP,
26  2009 WL 1515597, at *4 (N.D. Cal. Apr. 16, 2009) (unpublished); Johnson v. Dodson Pub. Schs.,
    Dist. No. 2-A(C), 463 F. Supp. 2d 1151, 1156 (D. Mont. 2006).

1  of plaintiff's eight claims for relief.  Thus, this factual summary generally proceeds claim-by-

2  claim, instead of in a temporal narrative fashion.

3        In the First Amended Complaint, plaintiff alleges that he was an Air Traffic

4  Control Specialist at the Oakland Air Route Traffic Control Center and was "removed from his

5  position by a FAA/DOT supervisor . . . for what has been described in part, as a mental state

6  problem." (First Am. Comp. ¶ 6.)  Plaintiff alleges that he was "broken down" and subsequently

7  deemed to be "medically incapacitated" and, therefore, not entitled to a medical clearance by "the

8  FAA/DOT Western Pacific Regional Flight surgeon . . . and [the] ZOA Air Traffic Manager."

9  (Id. ¶ 7.)  Plaintiff was required to have a medical clearance to perform his job.  (Id.)  Plaintiff

10 further alleges that he was forced against his will "seek and obtain evaluations and treatment

11 from psychiatric physicians and others."  (Id.)  He alleges that he complied "to the extent

12 practicable," but refused to disclose "certain information."  (Id. ¶¶ 7-8.)  In regards to his refusal

13 to provide certain information, plaintiff maintains that: (1) he had a "duty" not to disclose certain

14 information; (2) the FAA/DOT Western Pacific Regional Flight Surgeon and the ZOA Air

15 Traffic Manager "have a duty not to disclose or force others to disclose information that violates,

16 minimally, 5 U.S.C. § 2302(b)(8)";[3] and (3) the ZOA Air Traffic Manager has indicated "that

17

18    [3] Plaintiff does not identify the information that he withheld.  However, plaintiff attached
Exhibit A to his First Amended Complaint, which is a memorandum from plaintiff to Jeff Tilley that
19 indicates that plaintiff believed that he was instructed that "it would be best not to discuss" work
related issues with a psychiatrist for "safety and security reasons." (First Am. Compl., Ex. A.) Title
20 5 of the United States Code addresses Government Organization and Employees.  In part, 5 U.S.C.
§ 2302(b)(8) provides:
21
22         (b)  Any employee who has authority to take, direct others to take,
           recommend, or approve any personnel action, shall not, with respect to such
           authority--
23         . . .

24         (8) take or fail to take, or threaten to take or fail to take, a personnel action
           with respect to any employee or applicant for employment because of--
25
26           (A) any disclosure of information by an employee or applicant which the
           employee or applicant reasonably believes evidences--

certain information should not be disclosed." (See id. ¶¶ 9, 10, 12.)  Plaintiff's refusal to make

disclosures allegedly resulted in the flight surgeon concluding that plaintiff's therapy was "not

meaningful" and, ultimately, in plaintiff's termination from employment for failure to maintain a

medical clearance.  (See id. ¶¶ 8, 11.)

The allegations summarized above are contained in the section of the First

Amended Complaint addressing plaintiff's claim pursuant to the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., which is asserted only against the United States in

connection with plaintiff's termination from employment and alleged intentional infliction of

emotional distress.  Notably, plaintiff affirmatively states in his opposition briefs that he is *not*

alleging a wrongful termination claim.  (Pl.'s Opp'n to Fin. Defs.' Mots. to Dismiss at 4:5-7

(stating that plaintiff "has not filed a cause of action for wrongful termination and does not know

how it applies to this case, if at all."), Dkt. No. 58; Pl.'s Opp'n to United States's Mot. to

Dismiss at 6 ("[Plaintiff] has not filed a claim for wrongful termination."), Dkt. No. 63.)

The remaining seven claims in the First Amended Complaint are asserted against

"all defendants"—without any distinction as to which alleged wrongful acts were committed by

which defendant—and relate to the foreclosure and completed trustee's sale of plaintiff's home.

---

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of
authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such
information is not specifically required by Executive order to be kept secret
in the interest of national defense or the conduct of foreign affairs; or

(B) any disclosure to the Special Counsel, or to the Inspector General of
an agency or another employee designated by the head of the agency to
receive such disclosures, of information which the employee or applicant
reasonably believes evidences--

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of
authority, or a substantial and specific danger to public health or safety.

A notice of default was recorded as to plaintiffs's family home on November 13, 2009, and a trustee's sale was scheduled for June 16, 2010.  (First Am. Compl. ¶ 3.)  Plaintiff alleges that the trustee's sale occurred on July 13, 2010.  (See id. ¶¶ 36, 45.)

Plaintiff's second claim for relief seeks to quiet title in the property located at 2650 Leaning Tree Road, Placerville, CA 95667.  (See id. ¶¶ 16-23.)  Plaintiff alleges that he and his wife applied for a "Government Home Affordable Program (HAMP) home loan modification through Fremont Bank . . . toward the end of 2009" and that Fremont Bank offered plaintiff and his wife a HAMP loan modification in the beginning of 2010, but that plaintiff and his wife could not afford the modification.[4]  (Id. ¶¶ 21-22.)  Plaintiff alleges that the foreclosure and sale of the subject property was "brought about by the wrongful acts and omissions of the Defendants."  (Id. ¶ 23.)

In his third claim for relief, plaintiff seeks to enjoin the foreclosure and trustee's sale of the subject property.  (Id. ¶¶ 24-34.)  Plaintiff alleges that T.D. Service Co., Fremont Bank, and Federal National Mortgage Association recorded a notice of default on November 13, 2009, and noticed a trustee's sale for June 16, 2010.  (Id. ¶¶ 31-32 & Exs. B, C.)  Plaintiff disputes the breach that brought about the default on the grounds that the wrongful acts or omissions of "the defendants" brought it about.  (Id. ¶ 34.)  However, as noted above, plaintiff alleges that the trustee's sale already took place on July 13, 2010.  (Id. ¶¶ 36, 45.)

---

[4] One district court has described the HAMP program as follows:

> HAMP is a government program, established pursuant to the Emergency Economic Stabilization Act of 2008, designed to promote loan modification and other foreclosure prevention services.  Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives.  The servicer's obligations under HAMP are set forth in the HAMP Agreement, as well as in Program Guidelines established by the Department of the Treasury.

Villa v. Wells Fargo, No. 10CV81 DMS (WVG), 2010 WL 935680, at *1 (S.D. Cal. Mar. 15, 2010) (unpublished).

Plaintiff's fourth claim for relief seeks recovery for "negligence per se." (First Am. Compl. ¶¶ 35-42.) This claim is premised on the acts and omissions of defendants, allegedly acting under the authority of the Secretary of the Department of Housing and Urban Development, which resulted in a wrongful foreclosure. (See id. ¶¶ 36-38.) This claim asserts that T.D. Service Company offered plaintiff what amounted to a release of liability in exchange for a non-monetary resolution of the foreclosure action, and that this act (and possibly others) violated California Civil Code § 2924*l*[5] and California Business and Professions Code § 17200, and were thus "negligent as a matter of law." (See First Am. Compl. ¶¶ 38-41.) Plaintiff does not allege the precise nature of any such violation and does not separately seek relief for the actual violations of these statutes—his claim is limited to a negligence claim under a negligence per se theory.

Plaintiff's fifth claim alleges an additional claim for "negligence per se." (First Am. Compl. ¶¶ 43-48.) This claim generally alleges that T.D. Service Co., Fremont Bank, and Federal National Mortgage Association were negligent by violating the following: "28 U.S.C. § 2409a,[6] the National Housing Act,[7] TILA,[8] RESPA,[9] the Federal Housing Enterprise Financial

---

[5] This section essentially pertains to the filing of a "declaration of non-monetary status" by a trustee on a deed of trust when that trustee "maintains a reasonable belief that it has been named in the action or proceeding solely in its capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee." Cal. Civ. Code § 2924*l*(a). It is unclear how any purported violation of this provision may support a negligence claim.

[6] Generally, Section 2409a addresses real property quiet tile actions that involve a dispute about title where the United States claims an interest. Plaintiff has not precisely alleged how this statute is implicated insofar as his negligence claims are concerned.

[7] Plaintiff has not specifically elaborated on any specific violation of the National Housing Act, 12 U.S.C. §§ 1701 et. seq.

[8] Plaintiff's First Amended Complaint does not allege or explain the precise basis for any purported violation of the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq.

[9] Although plaintiff has not explained the precise basis for any violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq., it appears from plaintiff's pleading that he is alleging a violation of 12 U.S.C. § 2605.

Safety and Soundness Act,[10] contractual duties . . . pertaining to loans, codes of conduct, . . . and other applicable laws." (First Am. Compl. ¶ 47.) Specifically, plaintiff contends that he was deprived of disclosures regarding "appraisal, evaluation, and reports on multiple loan transactions during the initiation of the loan in default, qualified written requests pursuant to 12 U.S.C. § 2605, [and] loan insurance." (First Am. Compl. ¶ 47.) He does not specify which acts or omissions violated which particular statute other than the violation of 12 U.S.C. § 2605. Plaintiff also vaguely alleges that these defendants made misrepresentations and charged or attempted to charge excessive fees, and that "some all of these acts and/or omissions" were not known to plaintiff until the notice of default was recorded. Again, however, plaintiff styles this claim as one for negligence, not claims for violations of these particular statutes, breach of contract, or fraud.

Plaintiff's sixth claim for relief alleges a claim for "wrongful foreclosure." (First Am. Compl. ¶¶ 49-57.) Plaintiff generally alleges that the trustee's sale of his property was "wrongful for numerous reasons, including those which have already been stated herein." (Id. ¶ 50.) However, he also alleges that the trustee's sale violated 28 U.S.C. § 2409a, but does not explain the nature of the violation.

Plaintiff's seventh claim is one for "cancellation of instrument," resulting from the alleged wrongful foreclosure and trustee's sale. (First Am. Compl. ¶¶ 58-61.) This claim is, in essence, seeking relief that is derivative of plaintiff's wrongful foreclosure claim.

Finally, plaintiff's eighth claim for relief seeks the imposition of a constructive trust. (Id. ¶¶ 62-64.) Again, this request for a constructive trust is a form of relief and is derivative of plaintiff's other claims.

B.   Procedural History

This case has a rather twisted procedural history. Accordingly, it is recounted

---

[10]  Plaintiff has not explained the precise basis for any violation of the Federal Housing Enterprise Financial Safety and Soundness Act, 12 U.S.C. §§ 4501 et seq.

here in some detail.

On June 14, 2010, plaintiff filed his original complaint in this action (Dkt. No. 1), which was prior to the occurrence of the trustee's sale of plaintiff's home.  At no time did plaintiff seek a temporary restraining order or preliminary injunction from the court to stave off the trustee's sale.  Defendants T.D. Service Company and Fremont Bank filed separate motions to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. Nos. 13, 17.)

In response to T.D. Service Company's and Fremont Bank's respective motions to dismiss, and prior to the hearing and resolution of those motions, plaintiff filed, on July 28, 2010, a First Amended Complaint.  (Dkt. No. 20.)  Plaintiff properly filed his First Amended Complaint "as a matter of course" pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

T.D. Service Company moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 21.)  Defendants Fremont Bank and Federal National Mortgage Association also moved to dismiss the First Amended Complaint pursuant to Rule 12(b)(6).  (Dkt. No. 25.)  In the interest of judicial economy, the court reset the hearings on those motions to dismiss for October 7, 2010, with the intention of hearing those motions together.  (Dkt. No. 26.)  Meanwhile, defendant United States filed an answer to the First Amended Complaint.  (Dkt. No. 24.)

On September 9, 2010, plaintiff filed a "Second First Amended Complaint" in this matter, which will be referred to as the Second Amended Complaint.  (Dkt. No. 27.)  The court's docket does not indicate that plaintiff sought the other parties' written consent or leave to amend from the court, as required by Federal Rule of Civil Procedure 15(a)(2).  The Second Amended Complaint attempted to add three additional FTCA claims against the United States.  Despite plaintiff's failure to seek leave to amend, T.D. Service Company filed a motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), and the United States filed an answer to the Second Amended Complaint.  (Dkt. Nos. 29, 31.)

On September 21, 2010, plaintiff filed a "Third First Amended Complaint," which will be referred to as the Third Amended Complaint. (Dkt. No. 32.)  Again, the court's docket does not indicate that plaintiff sought the other parties' written consent or leave to amend from the court prior to filing the Third Amended Complaint.  The Third Amended Complaint again attempted to add three additional FTCA claims against the United States and a claim of the deprivation of constitutional rights, apparently pursuant to 42 U.S.C. § 1983, against Fremont Bank and Federal National Mortgage Association.

Curiously, on September 21, 2010, plaintiff also filed a written opposition to T.D. Service Company's motion to dismiss plaintiff's *First* Amended Complaint. (Dkt. No. 33.)  Then, on September 23, 2010, T.D. Service Company filed a motion to dismiss plaintiff's Third Amended Complaint pursuant to Rule 12(b)(6). (Dkt. No. 44.)  Fremont Bank, Federal National Mortgage Association, and the United States did not respond to the Third Amended Complaint.

On September 29, 2010, plaintiff filed a document entitled "Plaintiff's Objection to Assertions of Second Or Third Amended Complaint." (Dkt. No. 46.)  In that submission, plaintiff states the following:

> This notice is to inform that plaintiff objects to any party that has asserted a SECOND or THIRD AMENDED COMPLAINT made by plaintiff because plaintiff has not filed a SECOND or THIRD AMENDED COMPLAINT up to this date for this case.

(Id.)  Plaintiff's statement is contradicted by the court's docket in this case.  It appears that plaintiff believed that his "Second First Amended Complaint" and "Third First Amended Complaint" were not attempts to amend his pleading.  It is uncertain what purpose those later-filed pleadings served other than attempts to amend plaintiff's pleadings.

As reflected in an order entered October 1, 2010, the undersigned concluded that plaintiff exhausted his single amendment as a matter of course when he filed his First Amended Complaint.  Accordingly, the court struck: (1) plaintiff's "Second First Amended Complaint"; (2) the United States's answer to the Second Amended Complaint; and (3) plaintiff's "Third First

Amended Complaint." (Dkt. No. 51.)  The court also ordered that it would consider the motions

to dismiss the First Amended Complaint filed by T.D. Service Company, Fremont Bank, and

Federal National Mortgage Association on November 18, 2010.

In its October 1, 2010 order, the court also advised plaintiff that he could seek

leave to amend the First Amended Complaint.  Plaintiff did not do so.  However, on October 7,

2010, plaintiff filed objections to the undersigned's October 1, 2010 order, and sought

reconsideration of that order by the United States District Judge assigned to this matter.  (Dkt.

No. 53.)  United States District Judge John A. Mendez denied plaintiff's motion for

reconsideration.  (Dkt. No. 68.)

As noted above, the undersigned heard the Financial Defendants' motions to

dismiss on November 18, 2010.  Having concluded that plaintiff's First Amended Complaint was

subject to dismissal prior to the hearing, the undersigned held the hearing only to ascertain

whether there was any reason to permit plaintiff to further amend his complaint.  In this regard,

the undersigned attempted to ask plaintiff several questions about plaintiff's ability to amend his

complaint.  However, plaintiff reacted hostilely to the court's questions and repeatedly declined

or refused to answer the court's questions.[11]  As stated above, the undersigned submitted the

United States's motion.

II.    LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) or

12(h)(3) challenges the court's subject matter jurisdiction.  Federal district courts are courts of

limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of

jurisdiction," and "[a] federal court is presumed to lack jurisdiction in a particular case unless the

_____

[11]  On December 8, 2010, plaintiff filed a motion for recusal seeking that the undersigned recuse himself from presiding over this matter.  (Dkt. No. 79.)  On December 16, 2010, the undersigned entered an order denying plaintiff's motion for recusal.  (Dkt. No. 84.)  On January 14, 2011, plaintiff filed a motion for reconsideration of the undersigned's order denying plaintiff's motion for recusal.  (Dkt. No. 85.)  Plaintiff's motion for reconsideration is pending before Judge Mendez.

contrary affirmatively appears." <u>A-Z Int'l v. Phillips</u>, 323 F.3d 1141, 1145 (9th Cir. 2003)

(citations and quotation marks omitted); <u>see also</u> Fed. R. Civ. P. 12(h)(3) ("If the court

determines at any time that it lacks subject matter jurisdiction, the court must dismiss the

action."). When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court

takes the allegations in the complaint as true. <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir.

2004). However, the court is not restricted to the face of the pleadings and "may review any

evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

jurisdiction." <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th Cir. 1988), <u>cert. denied</u>, 489

U.S. 1052 (1989); <u>see also</u> <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir.

2003) ("A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the

pleadings or by presenting extrinsic evidence."). "When subject matter jurisdiction is challenged

under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in

order to survive the motion." <u>Tosco Corp. v. Communities for a Better Env't.</u>, 236 F.3d 495, 499

(9th Cir. 2001) (per curiam), <u>abrogated on other grounds by</u> <u>Hertz Corp v. Friend</u>, 130 S. Ct.

1181 (2010); <u>see also</u> <u>Colwell v. Dep't of Health & Human Servs.</u>, 558 F.3d 1112, 1121 (9th Cir.

2009) ("In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit

'affidavits or any other evidence properly before the court . . . . It then becomes necessary for the

party opposing the motion to present affidavits or any other evidence necessary to satisfy its

burden of establishing that the court, in fact, possesses subject matter jurisdiction." (citation

omitted, modification in original)).

   A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the sufficiency of the pleadings set forth in the complaint. <u>Vega v. JPMorgan Chase</u>

<u>Bank, N.A.</u>, 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard

of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); <u>see</u>

<u>also</u> <u>Paulsen v. CNF, Inc.</u>, 559 F.3d 1061, 1071 (9th Cir. 2009). "A complaint may survive a

1   motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

2   to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d

3   1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim

4   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

5   reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v.

6   Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at

7   1949).  The court accepts all of the facts alleged in the complaint as true and construes them in

8   the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).

9   The court is "not, however, required to accept as true conclusory allegations that are contradicted

10  by documents referred to in the complaint, and [the court does] not necessarily assume the truth

11  of legal conclusions merely because they are cast in the form of factual allegations." Paulsen,

12  559 F.3d at 1071 (citations and quotation marks omitted).  The court must construe a pro se

13  pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of

14  deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all

15  possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31

16  (9th Cir. 2000) (en banc).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court

17  "may generally consider only allegations contained in the pleadings, exhibits attached to the

18  complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of

19  Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

20          "A judgment on the pleadings is properly granted when, taking all the allegations

21  in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter

22  of law." Ventress v. Japan Airlines, 603 F.3d 676, 681 (9th Cir. 2010) (citation and quotation

23  marks omitted).  Where a motion for judgment on the pleadings is used to raise the defense of

24  failure to state a claim, the motion "faces the same test as a motion under Rule 12(b)(6)."

25  McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).  "When considering a motion

26  for judgment on the pleadings, [the] court may consider facts that are contained in materials of

1  which the court may take judicial notice." <u>Heliotrope Gen., Inc. v. Ford Motor Co.</u>, 189 F.3d

2  971, 980 n.18 (9th Cir. 1999) (citation and quotation marks omitted).

3  III.    <u>REQUESTS FOR JUDICIAL NOTICE</u>

4          T.D. Service Company requests that the court take judicial notice of three publicly

5  recorded documents: (1) a Deed of Trust recorded on January 16, 2004, as document number

6  2004-0003532-00 in the official records of the El Dorado County Recorder's Office ("Recorder's

7  Office"); (2) a Substitution of Trustee recorded on January 15, 2010, as instrument number 2010-

8  0002331-00 in the official records of the Recorder's Office; and (3) a Trustee's Deed Upon Sale

9  recorded on August 2, 2010, as instrument number 2010-0034867 in the official records of the

10 Recorder's Office.  (Dkt. No. 22.)  The court may take judicial notice of matters of public record,

11 but "may not take judicial notice of a fact that is 'subject to reasonable dispute.'"  <u>Lee v. City of</u>

12 <u>L.A.</u>, 250 F.3d 668, 689 (9th Cir. 2001) (citing Fed. R. Evid. 201(b)).  Additionally, under the

13 "incorporation by reference" doctrine, a court may also review documents "whose contents are

14 alleged in a complaint and whose authenticity no party questions, but which are not physically

15 attached to the [plaintiff's] pleading."  <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005)

16 (citation omitted and modification in original).  The incorporation by reference doctrine also

17 applies "to situations in which the plaintiff's claim depends on the contents of a document, the

18 defendant attaches the document to its motion to dismiss, and the parties do not dispute the

19 authenticity of the document, even though the plaintiff does not explicitly allege the contents of

20 that document in the complaint."  <u>Id</u>.  Accordingly, the undersigned takes judicial notice of the

21 documents requested by T.D. Service Company, which are matters of public record.

22         Fannie Mae and Fremont Bank request that the court take judicial notice of the

23 following documents: (1) the Grant Deed recorded on January 16, 2004, as document number

24 2004-0003531-00 in the official records of the Recorder's Office; (2) a Deed of Trust recorded

25 on January 16, 2004, as document number 2004-0003532-00 in the official records of the

26 Recorder's Office; (3) a Notice of Default and Election to Sell Under Deed of Trust recorded on

13

1   November 13, 2009, as document number 2009-0056712-00 in the official records of the

2   Recorder's Office; (4) a Notice of Trustee's Sale recorded on May 27, 2010, as document

3   number 2010-0023410-00 in the Recorder's Office; (5) an Assignment of Deed of Trust recorded

4   on August 2, 2010, as document number 2010-0034866-00 in the official records of the

5   Recorder's Office; and (6) the Trustee's Deed Upon Sale recorded on August 2, 2010, as

6   document number 2010-0034867-00 in the official records of the Recorder's Office.  (Dkt.

7   No. 25, Doc. No. 25-2.)  For the reasons stated above as to T.D. Service Company's request for

8   judicial notice, the undersigned takes judicial notice of these documents, which are matters of

9   public record.

10          On December 9, 2010, plaintiff requested that the court take judicial notice of

11   excerpts of the "Truth In Lending Comptroller's Handbook July 2010," which is published by the

12   Office of the Comptroller of the Currency and provides consumers with information about the

13   Truth In Lending Act.  (Dkt. No. 81.)  The undersigned takes judicial notice of the existence of

14   the excerpts from this public document, but does not take judicial notice of the truth of any of the

15   matters stated therein.

16   IV.   DISCUSSION

17          Three motions are pending before the court.  The undersigned first addresses the

18   motion to dismiss and motion for judgment on the pleadings filed by the United States, and then

19   addresses the motions to dismiss filed by the Financial Defendants.  However, plaintiff's claims

20   for injunctive relief, cancellation of instruments, and the imposition of a constructive trust are

21   analyzed as to all defendants toward the end of these findings and recommendations.

22          A.   The United States's Motions to Dismiss and for Judgment on the Pleadings

23               1.   Plaintiff's FTCA Claim, Negligence Claims, and Wrongful Foreclosure
                        Claim (Claims 1, 4, 5, and 6)

24

25          The United States seeks the dismissal of plaintiff's FTCA claim, negligence

26   claims, and wrongful foreclosure claim on the grounds that the court lacks subject matter

14

1    jurisdiction over those claims.  Specifically, the United States that, in essence, it has not waived

2    its sovereign immunity as to these claims because plaintiff failed to timely present these claims

3    as required by the FTCA and, accordingly, those claims are forever barred as to the United

4    States.

5            To confer subject matter jurisdiction in an action against a sovereign, there must

6    exist (1) "statutory authority vesting a district court with subject matter jurisdiction," and (2) "a

7    waiver of sovereign immunity."  Alvarado v. Table Mountain Rancheria, 509 F.3d 1008, 1016

8    (9th Cir. 2007).  Because the United States is a sovereign, it is immune from suit unless it has

9    expressly waived its immunity and consented to be sued.  See Dunn & Black, P.S. v. United

10   States, 492 F.3d 1084, 1087-88 (9th Cir. 2007).  The United States Supreme Court has

11   "frequently held . . . that a waiver of sovereign immunity is to be strictly construed, in terms of

12   scope, in favor of the sovereign."  Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261

13   (1999).  Moreover, the waiver cannot be implied, but must be "unequivocally expressed" in the

14   statutory text.  Id.; accord Harger v. Dep't of Labor, 569 F.3d 898, 903 (9th Cir. 2009).  The

15   party asserting a waiver of sovereign immunity bears "the burden of establishing that its action

16   falls within an unequivocally expressed waiver of sovereign immunity by Congress. . . ."  Dunn

17   & Black, P.S., 492 F.3d at 1088.

18           Relevant to plaintiff's claims against the United States, the FTCA waives the

19   United States's sovereign immunity as to tort claims for money damages arising out of negligent

20   or other wrongful acts or omissions of federal government employees acting within the scope of

21   their employment.  See 28 U.S.C. §§ 1346(b)(1), 2675(a); see also, e.g., Terbush v. United

22   States, 516 F.3d 1125, 1128 (9th Cir. 2008) ("The FTCA waives the government's sovereign

23   immunity for tort claims arising out of negligent conduct of government employees acting within

24   the scope of their employment.").  An action against the United States brought pursuant to the

25   FTCA may not be instituted "unless the claimant shall have first presented the claim to the

26   appropriate Federal agency and his claim shall have been finally denied by the agency in writing

and sent by certified or registered mail." 28 U.S.C. § 2675(a). "A claim is deemed presented for purposes of § 2675(a) when a party files '(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.'" Blair v. United States, 304 F.3d 861, 864 (9th Cir. 2002) (quoting Warren v. U.S. Dep't of Interior Bureau of Land Mgmt., 724 F.2d 776, 780 (9th Cir. 1984) (en banc)).[12] The FTCA further provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b); see also, e.g., Winter v. United States, 244 F.3d 1088, 1090 (9th Cir. 2001). "A claim accrues when a plaintiff knows that he has been injured and who has inflicted the injury."[13] Winter, 244 F.3d at 1090.

Here, plaintiff's First Amended Complaint does not allege that plaintiff complied with the FTCA's claim presentation requirement as to any of his claims against the United States. For this reason alone, plaintiff's claims against the United States must be dismissed for lack of subject matter jurisdiction.

Furthermore, plaintiff's claims against the United States based on the negligent or wrongful acts or omissions of government employees should be dismissed with prejudice

---

[12]  A plaintiff's failure to satisfy the FTCA's claim presentation requirements deprives the court of subject matter jurisdiction over the claims at issue. As the Ninth Circuit Court of Appeals has remarked, the "claim requirement of section 2675 is jurisdictional in nature and may not be waived." Jerves v. United States, 966 F.2d 517, 519 (9th Cir. 1992); see also Alvarado, 509 F.3d at 1019 ("Appellants cannot establish subject matter jurisdiction through the FTCA because they have not administratively exhausted their claims."); Blair, 304 F.3d at 863-64 ("Under the claim presentation rule, a district court cannot exercise subject matter jurisdiction over an action brought pursuant to the FTCA unless the plaintiff 'shall have first presented the claim to the appropriate Federal agency. . . .'" (citing 28 U.S.C. § 2675(a); modification in original)).

[13]  In Winter, the Court of Appeals further stated: "Accrual of a claim does not 'await awareness by a plaintiff that his injury has been negligently inflicted.' As we have pointed out, 'It is well settled that the limitations period begins to run when the plaintiff has knowledge of injury and its cause, and not when the plaintiff has knowledge of legal fault.'" 244 F.3d at 1090 (citations omitted).

1   because plaintiff has not met his burden to show that he adequately presented his claims to the

2   United States, and nothing in plaintiff's submissions to the court suggests that plaintiff could

3   amend his First Amended Complaint to cure the defects therein.  First, as to plaintiff's express

4   FTCA claim, which alleges negligence and wrongful acts on the part of government employees

5   in connection with the termination of plaintiff's employment, plaintiff alleges that he was

6   removed from his position as an Air Traffic Control Specialist on February 22, 2003.  (First Am.

7   Compl. ¶ 6.)  Plaintiff's opposition brief and an exhibit attached to plaintiff's declaration in

8   support thereof reflect that plaintiff was terminated from employment on September 3, 2004.

9   (Pl.'s Opp'n to United States's Mot. to Dismiss at 6, 8; Bridgeman Decl. at 14 (termination letter

10  stating that termination was effective September 3, 2004).)  Thus, plaintiff was obligated to

11  properly present his FTCA claim related to his employment by September 3, 2006.  He did not

12  do so and, accordingly plaintiff's first claim is forever barred.

13          Plaintiff counters in his written opposition that he filed formal and informal

14  grievances in September of 2004 to dispute the personnel action taken against him, i.e., removal

15  from duty and termination for failure to maintain a medical clearance, all of which were either

16  expressly denied or should be deemed denied for lack of a response.  (See Pl.'s Opp'n to United

17  States's Mot. to Dismiss at 15-17, 20; Bridgeman Decl. at 18, 20, 21.)  Even assuming that

18  plaintiff intended that these formal and informal grievances serve as the means by which plaintiff

19  timely presented his tort claims under the FTCA, those grievances are legally inadequate.  None

20  of the grievances states "a sum certain damages claim" with respect to plaintiff's claims, which is

21  required to exhaust claims of tortious or wrongful conduct under the FTCA.  See, e.g., Blair, 304

22  F.3d at 864.  Thus, plaintiff's argument with respect to the grievances fails.  Additionally,

23  plaintiff's grievances do not seek money damages; they only seek reinstatement of plaintiff's

24  medical clearance and return to job.  To the extent plaintiff's tort claims seek injunctive relief in

25  the form of reinstatement, such relief is barred because the only relief provided for in the FTCA

26  is money damages.  See Westbay Steel, Inc. v. United States, 970 F.2d 648, 651 (9th Cir. 1992);

1   Palm v. United States, 835 F. Supp. 512, 518 (N.D. Cal. 1993).

2         Plaintiff's claims covered by the FTCA fail for the additional reason that they are

3   preempted by the Civil Service Reform Act ("CSRA"), which is codified in various sections of

4   Title 5 of the United States Code.  Plaintiff contends that insofar as his employment was

5   concerned, he was covered and subject to the provisions of the Civil Service Reform Act, and

6   that he exhausted his remedies consistent with that act and the applicable collective bargaining

7   agreement.  (See Pl.'s Opp'n to United States's Mot. to Dismiss at 12-16.)  "The CSRA limits

8   federal employees challenging their supervisors' 'prohibited personnel practices' to an

9   administrative remedial system."  Mahtesian v. Lee, 406 F.3d 1131, 1134 (9th Cir. 2005).  Thus,

10  assuming the truth of plaintiff's representation that he is covered by the CSRA, if plaintiff's

11  termination constitutes a "prohibited personnel action" under the CSRA, his claims related to the

12  termination of his employment are barred because the CRSA provides the exclusive means by

13  which plaintiff can challenge personnel actions.  See id. ("If the conduct that [Mahtesian]

14  challenge[s] in this action falls within the scope of the CSRA's 'prohibited personnel practices,'

15  then the CSRA's administrative procedures are his only remedy, and the federal courts cannot

16  resolve Appellants' claims under . . . the FTCA.") (modifications in original) (quoting Orsay v.

17  U.S. Dep't of Justice, 289 F.3d 1125, 1128 (9th Cir. 2002)).  The Ninth Circuit Court of Appeals

18  has held that alleged unlawful termination constitutes a "prohibited personnel action" under the

19  CSRA.  Manango v. United States, 529 F.3d 1243, 1247 (9th Cir. 2008) (holding that appellant's

20  "claim that he was unfairly terminated falls squarely within the definition of a personnel action as

21  a 'significant change in duties, responsibilities or working conditions' under the CSRA") (citing

22  5 U.S.C. § 2302(a)(2)(A)(xi)).  Accordingly, plaintiff's FTCA claims are preempted by the

23  CSRA, and must be dismissed with prejudice for this additional reason.

24        Plaintiff's negligence per se claims and wrongful foreclosure claim should

25  similarly be dismissed with prejudice.  For similar reasons as those stated above, plaintiff has not

26  presented these claims to the United States as required by the FTCA.  Nothing in plaintiff's

1    operative compliant or other papers filed with the court suggests that plaintiff could cure the

2    deficiencies in regards to the FTCA presentation requirements.

3                        2.        Plaintiff's Quiet Title Act Claim (Claim 2)

4                Plaintiff's quiet title claim seeks to quiet title to the subject property in plaintiff's

5    name pursuant to 28 U.S.C. § 2409a, which authorizes the naming of the United States as a

6    defendant in a civil action to quiet title to real property in which the United States claims an

7    interest.  The United States has moved to dismiss on the grounds that it does not claim an interest

8    in the property at issue here.  Plaintiff alleges that the United States claims an interest by virtue

9    of the fact that defendant Federal National Mortgage Association, or "Fannie Mae," "is the owner

10   of the loan on the property" and "is a potential party to become an owner of the property" after

11   the "foreclosure sale."  (See First Am. Compl. ¶¶ 19-20.)  Plaintiff alleges elsewhere that the

12   trustee's sale has already occurred.  (Id. ¶ 36.)

13               In relevant part, the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, provides: "The

14   United States may be named as a party defendant in a civil action under this section to adjudicate

15   a disputed title to real property in which the United States claims an interest, other than a security

16   interest or water rights."  28 U.S.C. § 2409a(a).  The QTA waives the United States's sovereign

17   immunity in actions to quiet title.  Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009).

18   The Ninth Circuit Court of Appeals has held that "[f]or a court to exercise jurisdiction under the

19   QTA, '(1) the United States must claim an interest in the property at issue, and (2) there must be

20   a disputed title to real property.'"  Id. at 686 (quoting Leisnoi, Inc. v. United States, 170 F.3d

21   1188, 1191 (9th Cir. 1999)).

22               The first element of the jurisdictional test is at issue here, and plaintiff alleges that

23   the United States claims an interest in the subject property because Fannie Mae allegedly claims

24   an interest in the now-defaulted loan and/or the property.  The undersigned concludes that the

25   United States does not claim an interest in the subject property because Fannie Mae is not a

26   federal agency.  As provided in 12 U.S.C. § 1716b, what was previously referred to as the

                                                        19

1    Federal National Mortgage Association was partitioned into two entities.  One corporation,

2    Fannie Mae, retained the name Federal National Mortgage Association and was designated as a

3    "Government-sponsored private corporation."  Id.  The other corporation, known as the

4    Government National Mortgage Association, was designated to remain "in the Government."  Id.

5    One judge of this court recently stated, citing Section 1716b, that "Fannie Mae is a private,

6    for-profit entity."  See Hookano v. Wash. Mut. Bank, Inc., No. CIV. S-08-751 LKK/JFM, 2010

7    WL 4623956, at *2 (E.D. Cal. Nov. 4, 2010) (unpublished) (stating also that Fannie Mae is "a

8    private shareholder-owned company, and its common stock is publicly traded on the New York

9    Stock Exchange).  The undersigned agrees that, by statute, Fannie Mae is not a federal agency.

10   Accordingly, the United States does not claim an interest in the subject property.

11           In his opposition brief, plaintiff makes two arguments in an effort to demonstrate

12   that the United States has claimed an interest to the subject property by virtue of Fannie Mae's

13   interest.  First, plaintiff relies on a federal regulation that provides that the Secretary of the

14   Department of Housing and Urban Development ("HUD") has general regulatory power over

15   Fannie Mae.  (Pl.'s Opp'n to United States's Mot. to Dismiss at 22 (citing 24 C.F.R. § 81.1(a)).)

16   Second, plaintiff argues that Fannie Mae is, in essence, a federal agency because the Federal

17   Housing Finance Agency ("FHFA") became the conservator of Fannie Mae in 2008.  (Pl.'s

18   Opp'n to United States's Mot. to Dismiss at 23-25.)  The undersigned is not persuaded by

19   plaintiff's arguments.  However, even assuming that the United States could be found to claim an

20   interest here, plaintiff's quiet title claim would fail because it is contingent on his other claims

21   for relief which have been found to be subject to dismissal.  See, cf., Juarez v. Wells Fargo Bank,

22   N.A., No. CV 09-3104 AHM (AGRx), 2009 WL 3806325, at *2 (C.D. Cal. Nov. 11, 2009)

23   (dismissing plaintiff's quiet title claim with prejudice because that claim was dependent on

24   plaintiff's right to rescind the contract and that right to rescind was time-barred).  Accordingly,

25   the undesigned will recommend the dismissal of plaintiff's QTA claim with prejudice.

26   ////

1         B.      The Financial Defendants' Motions to Dismiss

2         Before turning to the Financial Defendants' motions to dismiss, the undersigned

3 addresses two issues that impact several of the claims against the Financial Defendants.  First, the

4 undersigned clarifies that because, as explained above, the United States does not claim an

5 interest in the property at issue, 28 U.S.C. § 2409a does not govern plaintiff's quiet title claim.

6 Thus, California law, and not federal law guides the court's discussion of plaintiff's quiet title

7 claim.

8         Second, the undersigned concludes that to the extent that plaintiff is claiming any

9 alleged procedural irregularities in the foreclosure of the property and trustee's sale in support of

10 claims seeking to set aside that sale and quiet title in plaintiff, such claims fail because plaintiff

11 has not alleged a tender of the entire indebtedness.  "Under California law, in an action to set

12 aside a trustee's sale, a plaintiff must demonstrate that he has made a valid and viable tender

13 [offer] of payment of the indebtedness."  Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp.

14 2d 1177, 1183-84 (N.D. Cal. 2009) (citations and quotation marks omitted); see also Alcaraz v.

15 Wachovia Mortgage FSB, 592 F. Supp. 2d 1296, 1304 (E.D. Cal. 2009) ("'A valid and viable

16 tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale

17 under a deed of trust.'") (citing Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 92 Cal.

18 Rptr. 851 (Ct. App. 1971)).  A tender must be one of full performance and must also be

19 unconditional.  Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 580, 205 Cal. Rptr. 15,

20 18 (Ct. App. 1984).  The California Court of Appeal has held that the tender rule applies in an

21 action to set aside a trustee's sale for irregularities in the sale notice or procedure and has stated

22 that "[t]he rationale behind the rule is that if plaintiffs could not have redeemed the property had

23 the sale procedures been proper, any irregularities in the sale did not result in damages to the

24 plaintiffs."  FPCI RE-HAB 01 v. E & G Invs., Ltd., 207 Cal. App. 3d 1018, 1021, 255 Cal. Rptr.

25 157, 160 (Ct. App. 1989).  Furthermore, a party must allege full tender "in order to maintain any

26 cause of action for irregularity in the sale procedure."  Abdallah v. United Savs. Bank, 43 Cal.

App. 4th 1101, 1109, 51 Cal. Rptr. 2d 286, 292 (Ct. App. 1996); see also Arnolds Mgmt. Corp.,

158 Cal. App. 3d at 579, 205 Cal. Rptr. at 18 ("A cause of action 'implicitly integrated' with the

irregular sale fails unless the trustor can allege and establish a valid tender." (citation omitted)).

This rule also generally applies to a claim to cancel a voidable sale under a deed of trust. See

Karlsen, 15 Cal. App. 3d at 117, 92 Cal. Rptr. at 854 ("A valid and viable tender of payment of

the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.").

        Here, plaintiff has not alleged that he has tendered the full amount of the

indebtedness.[14]  Accordingly, plaintiff's claims including his quiet title, negligence, wrongful

foreclosure, and cancellation claims fail to the extent they rely on procedural irregularities in the

foreclosure and trustees' sale of the property.  See, e.g., Ngoc Nguyen v. Wells Fargo Bank,

N.A., ___ F.Supp.2d ___, No. C-10-4081-EDL, 2010 WL 4348127, at *11-12 (N.D. Cal. Oct.

27, 2010) (dismissing wrongful foreclosure and quiet title claims for failure to tender); accord

Garcia v. Wachovia Mortgage Corp., 676 F. Supp. 2d 895, 914 (C.D. Cal. 2009) ("In order to

allege a claim to quiet title, Plaintiff must allege ability to tender the amounts admittedly

borrowed.").  The undersigned addresses additional grounds for dismissal below.

            1.    T.D. Service Company's Motion to Dismiss

                a.    Quiet Title Claim

        T.D. Service Company moves to dismiss plaintiff's quiet title claim on the

grounds that T.D. Service Company, which acted as the foreclosure trustee with respect to a

trustee's sale that has already occurred, does not claim any interest in the property at issue and,

accordingly, is not a proper party insofar as the quiet title claim is concerned.  California Code of

Civil Procedure § 762.010 provides that the "plaintiff shall name as defendants in the action the

persons having adverse claims to the title of the plaintiff against which a determination is

_____

[14]   Plaintiff's opposition brief states that he alleged a proper tender in his First Amended
Complaint.  (Pl.'s Opp'n to Fin. Defs.' Mots. to Dismiss at 19, Dkt. No. 58.)  This assertion is not
supported by the allegations in the First Amended Complaint, and plaintiff repeatedly refused to
answer the undersigned's questions regarding the tender issue at the November 18, 2010 hearing.

1   sought."  Under the facts of this case, the argument of T.D. Service Company, which claims no

2   interest of any type in the property, is well-taken.  Accordingly, plaintiff's quiet title claim should

3   be dismissed.[15]

4                          b.     Negligence Per Se Claims

5                  Next, T.D. Service Company argues that plaintiff's negligence claims should be

6   dismissed because it does not owe a duty to plaintiff beyond the statutory duties provided in

7   California Civil Code §§ 2924 et seq.[16]  Generally, "[t]o prevail on [a] negligence claim,

8   plaintiffs must show that [the defendant] owed them a legal duty, that it breached the duty, and

9   that the breach was a proximate or legal cause of their injuries."  Merrill v. Navegar, Inc., 26 Cal.

10  4th 465, 477, 28 P.3d 116, 123 (Cal. 2001).  There is no such thing as an independent claim for

11  "negligence per se," and this theory does not confer a private action where a statute does not

12  otherwise provide for one.  See, e.g., Basham v. Pac. Funding Group, No. 2:10-cv-96 WBS

13  GGH, 2010 WL 2902368, at *2 (E.D. Cal. July 22, 2010) (unpublished) ("The negligence per se

14  doctrine does not establish a cause of action distinct from negligence.").  Instead, negligence per

15  se is an evidentiary doctrine, codified at California Evidence Code § 669, which creates a

16  presumption that a defendant's conduct fell below the applicable standard of care, i.e., a

17  presumption of a breach, "if four elements are established: (1) the defendant violated a statute,

18  ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to

19  person or property; (3) the death or injury resulted from an occurrence the nature of which the

20  statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death

21  or the injury to his person or property was one of the class of persons for whose protection the

22

23          [15]  Plaintiff has not alleged in his First Amended Complaint that T.D. Service Company has
    an unknown, uncertain, or contingent interest in the property, which might support naming T.D.

24  Service Company as a defendant under certain circumstances.  See Cal. Civ. Proc Code
    § 762.020(b).

25          [16]  The existence of a legal duty on the part of the defendant is a question of law to be
26  determined by the court.  Kentucky Fried Chicken of Cal., Inc. v. Superior Court, 14 Cal. 4th 814,
    819, 927 P.2d 1260 (Cal. 1997).

1 statute, ordinance, or regulation was adopted." Quiroz v. Seventh Avenue Ctr., 140 Cal. App.

2 4th 1256, 1285, 45 Cal. Rptr. 3d 222, 244 (Ct. App. 2006); accord Millard v. Biosources, Inc.,

3 156 Cal. App. 4th 1338, 1353, 68 Cal. Rptr. 3d 177, 187-88 (Ct. App. 2007).

4         Here, T.D. Service Company's argument that it owes plaintiff no duty beyond its

5 duties contained in California Civil Code §§ 2924 et seq. is supported by California case law.

6 See I.E. Assocs. v. Safeco Title Ins. Co., 39 Cal. 3d 281, 288, 702 P.2d 596, 600 (Cal. 1985) ("In

7 short, there is no authority for the proposition that a trustee under a deed of trust owes any duties

8 with respect to exercise of the power of sale beyond those specified in the deed and the

9 statutes."); Banc of Am. Leasing & Capital, LLC v. 3 Arch Trustee Servs., Inc., 180 Cal. App.

10 4th 1090, 1097, 103 Cal. Rptr. 3d 397, 401 (Ct. App. 2009) ("The rights and powers of trustees

11 in nonjudicial foreclosure proceedings are strictly limited and defined by the contract of the

12 parties and the statutes" (citation and quotation marks omitted).).  Plaintiff's First Amended

13 Complaint does not contain allegations sufficient to state a plausible claim that T.D. Service Co.

14 violated those limited duties.  At most, plaintiff cursorily alleges that T.D. Service Company

15 violated California Civil Code § 2924*l*, which permits a trustee to file a declaration of

16 nonmonetary status,[17] and derivatively violated California Business and Professions Code

17 § 17200.  (First Am. Compl. ¶ 41.)  However, plaintiff has not identified a duty imposed on T.D.

18 Service Company in Section 2924*l* that would give rise to liability for negligence under a

19

20

21

22     [17] As a judge of this court recently explained, California Civil Code Section 2924*l* provides that "where 'trustee under a deed of trust [who] is named in an action or proceeding in which the deed of trust is the subject, and in the event that the trustee maintains a reasonable belief that it has been named in the action or proceeding solely in its capacity as trustee' it may file a declaration of nonmonetary status.  If unopposed, 'the trustee shall not be required to participate any further in the action or proceedings, shall not be subject to any monetary awards as and for damages, attorneys' fees or costs, shall be required to respond to any discovery requests as a nonparty, and shall be bound by any court order relating to the subject deed of trust that is subject to the action or proceeding.'" Tran v. Wash. Mut. Bank, No. CIV. S-09-3277 LKK/DAD, 2010 WL 520878, at *1 (E.D. Cal. Feb. 11, 2010) (unpublished) (citations omitted, modification in original).

1    negligence per se theory.[18]

2          Moreover, plaintiff's argument that T.D. Service Company owes a broader

3    fiduciary duty to him fails.  See Kachlon v. Markowitz, 168 Cal. App. 4th 316, 335, 85 Cal. Rptr.

4    3d 532, 546 (Ct. App. 2008) ("The trustee in nonjudicial foreclosure is not a true trustee with

5    fiduciary duties, but rather a common agent for the trustor and beneficiary.  The scope and nature

6    of the trustee's duties are exclusively defined by the deed of trust and the governing statutes.  No

7    other common law duties exist.") (citation omitted); accord Saldate v. Wilshire Credit Corp., 686

8    F. Supp. 2d 1051, 1061-62 (E.D. Cal. 2010).  Accordingly, plaintiff's negligence claims should

9    be dismissed against T.D. Service Company.[19]

10                          c.    Wrongful Foreclosure Claim

11          In response to plaintiff's alleged wrongful foreclosure claim, T.D. Service

12   Company seeks dismissal on the grounds that: (1) plaintiff has not alleged any specific

13   wrongdoing on T.D. Service Company's part; (2) the allegations pertaining to the claim of

14   wrongful foreclosure are redundant of the other allegations in the complaint; and (3) T.D. Service

15   Company is immune from liability under California Civil Code § 2924(d).  Plaintiff has not

16   alleged any specific acts supporting T.D. Service Company's liability for wrongful foreclosure.

17   His First Amended Complaint reflects that T.D. Service Company acted as a trustee in

18   connection with the non-judicial foreclosure and trustee's sale, but does not allege facts regarding

19   the basis for T.D. Service Company's liability for wrongful foreclosure.  Accordingly, without

20   more, plaintiff's claim appears to be redundant of his other claims, and plaintiff has failed to state

21

22

_____

23        [18] Indeed, it is not certain that Section 2924l is a substantive rule that applies in federal court.
     See Tran, 2010 WL 520878, at *1 (concluding that Section 2924l is a state procedural rule and thus
24   "nonmonetary status may not be granted in federal court").

25        [19] Additionally, as to plaintiff's fifth claim for relief, alleging various violations of statutes,
     plaintiff does not allege any negligent conduct on the part of T.D. Service Company in his First
26   Amended Complaint.

1    a claim against T.D. Service Company in regards to the claim for wrongful foreclosure.[20]   The

2    court need not reach T.D. Service Company's other arguments.

3           2.      Federal National Mortgage Association and Fremont Bank's Motion to
                    Dismiss
4

5                   a.      Quiet Title Claim

6           Plaintiff's quiet title claim is premised on an allegation that Fremont Bank offered

7    plaintiff and his wife "a United States Government Home Affordable Program (HAMP) home

8    loan modification at the beginning of 2010," but that plaintiff and his wife could not afford the

9    modification.  Federal National Mortgage Association and Fremont Bank move to dismiss

10   plaintiff's quiet title claim as to them on the grounds that they are not liable for plaintiff's

11   inability to afford the loan modification offered and, in any event, owed no duty to offer a loan

12   modification to plaintiff.

13          As an initial matter, plaintiff alleges that he was actually offered a loan

14   modification, but simply could not afford it.  Plaintiff has not provided any authority in his

15   opposition for the proposition that plaintiff was entitled to a loan modification that he could

16   afford and that a failure to provide an affordable loan modification supports the quieting of title

17   in plaintiff.  Moreover, insofar as the HAMP program is concerned, district courts have

18   persuasively concluded that lenders are not required to make loan modifications for borrowers

19   who qualify under HAMP and that there is no private right of action to enforce obligations under

20   HAMP that exist between a loan servicer and the government.  See Wilson v. GMAC Mortgage

21   LLC, 10CV2559 DMS (NLS), 2010 WL 5387829, at *1 (S.D. Cal. Dec. 22, 2010) (unpublished)

22   ("HAMP generally involves an agreement between a participating loan servicer and the U.S.

23   Department of Treasury and a borrower does not have a private right to enforce the HAMP

24

25          [20]   At most, plaintiff's opposition brief alleges that T.D. Service Company proposed a
     settlement agreement to plaintiff, which plaintiff rejected.  It is not clear how this alleged offer of
26   settlement gives rise to liability for wrongful foreclosure.

contract."); <u>Ingalsbe v. Bank of Am., N.A.</u>, No. 1:10-cv-01665-OWW-SMS, 2010 WL 5279839, at *5 (E.D. Cal. Dec. 13, 2010) (unpublished) (collecting cases and stating that the "consensus among district courts in the Ninth Circuit is that there is no private right of action under HAMP"); <u>Hernandez v. HomeEq Servicing</u>, No. 1:10cv01484 OWW DLB, 2010 WL 5059673, at *2-3 (E.D. Cal. Dec. 6, 2010) (unpublished) (concluding that HAMP provides incentives to modify loans but does not require such modifications, and that there is no private right of action to enforce HAMP); <u>Hoffman v. Bank of Am.</u>, No. C 10-2171 SI, 2010 WL 2635773, at *5 (N.D. Cal. June 30, 2010) (unpublished) (concluding that "lenders are not required to make loan modifications for borrowers that qualify under HAMP nor does the servicer's agreement confer an enforceable right on the borrower"); <u>Marks v. Bank of Am.</u>, No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5-7 (D. Ariz. June 22, 2010) (unpublished) (discussing the history of HAMP and concluding that no express or implied private right of action exists to enforce HAMP obligations).  Accordingly, plaintiff's quiet title claim should be dismissed.[21]

> b.      Negligence Per Se Claims

Fremont Bank and Federal National Mortgage Association argue that plaintiff's First Amended Complaint fails to state a claim for negligence based on statutory violations.  The undersigned agrees.

First, the undersigned agrees with Fremont Bank and Federal National Mortgage Association's assertion that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  <u>Nymark v. Heart Fed. Sav. & Loan Ass'n</u>, 231 Cal. App. 3d 1089, 283 Cal. Rptr. 53, 56 (Ct. App. 1991); <u>see also</u> <u>Wagner v. Benson</u>, 101 Cal.

---

[21]  Fannie Mae and Fremont Bank argue that they had no obligation to offer plaintiff a loan modification under California Civil Code § 2923.6.  However, plaintiff does not make such an argument.  In any event, to the extent that plaintiff argues that he as entitled to a loan modification pursuant to California Civil Code § 2923.6, such an argument fails because that statutory section does not place a duty on Fannie Mae or Fremont Bank to offer plaintiff a loan modification.  <u>See</u>, <u>e.g.</u>, <u>Pantoja</u>, 640 F. Supp. 2d at 1187-88.

App. 3d 27, 35, 161 Cal. Rptr. 516 (Ct. App. 1980) ("Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender'" (citation omitted).).  Plaintiff has not alleged anything more than an arms-length relationship between himself and Fremont Bank and Federal National Mortgage Association insofar as his loan is concerned, and as a result, plaintiff's claim in his opposition that these defendants owed plaintiff a general fiduciary duty is not well-taken.

Second, the undersigned concludes that plaintiff failed to allege facts identifying the specific breach of a specific duty imposed on Fremont Bank and Federal National Mortgage Association by the National Housing Act, or the Federal Housing Enterprise Financial Safety and Soundness Act.  (See First Am. Compl. ¶ 47.)  Fremont Bank and Federal National Mortgage Association should not be left to guess about the nature of the statutory duties purportedly owed and violated by them in regards to plaintiff.[22]  Without more, plaintiff's negligence per se claims that rely on these statutes fail.

Plaintiff's First Amended Complaint appears to allege that either Fremont Bank and Federal National Mortgage Association failed to respond to a qualified written request submitted by plaintiff, in violation of a provision of RESPA, 12 U.S.C. § 1205.  (See First Am. Compl. ¶ 47.)  Plaintiff's allegations are general and do not specify which provision of Section 1205 either Fremont Bank and Federal National Mortgage Association allegedly violated.  In regards to a qualified written request for information ("QWR"), 12 U.S.C. § 1205(e)(1) provides:

> (e) Duty of loan servicer to respond to borrower inquiries
>
> (1) Notice of receipt of inquiry

---

[22]  Moreover, in the context of plaintiff's negligence per se claim, plaintiff alleges that Fremont Bank and Federal National Mortgage Association engaged in fraud.  (First Am. Compl. ¶ 47.)  However, plaintiff's fraud allegations are vague and conclusory and do not meet the specificity requirements attendant to claims of fraud under the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.")

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Plaintiff's First Amended Complaint does not allege whether and when plaintiff actually sent a QWR to either Federal National Mortgage Association or Fremont Bank, whether the QWR met the requirements of the statute, and what plaintiff sought through the QWR. Without more, plaintiff's negligence claim should be dismissed to the extent it is premised on RESPA.[23]  See, e.g., Javaheri v. JPMorgan Chase Bank, N.A., No. CV10-08185 ODW (FFMx), 2011 WL 97684, at *4 (C.D. Cal. Jan. 11, 2011) (unpublished) (dismissing plaintiff's RESPA claim because plaintiff's complaint failed to allege that his request constituted a QWR under

---

[23]   Plaintiff's opposition brief, which does not constitute part of the First Amended Complaint, discusses a request for appraisal documents allegedly sent to Fremont Bank.  (Pl.'s Opp'n to Fin. Defs.' Mot. to Dismiss at 17-18.)  It is unclear whether this alleged request—which is not identified in the First Amended Complaint—serves as the basis for plaintiff's RESPA claim. Assuming it is, plaintiff's claim fails because plaintiff's First Amended Complaint does not allege actual pecuniary harm in support of actual damages under RESPA and does not allege a pattern or practice of non-compliance with RESPA in support of statutory damages.  See Lal v. Am. Home Servicing, Inc., 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (dismissing RESPA claim where plaintiff's complaint did not allege pecuniary damages in support of a claim for actual damages and did not allege a pattern or practice of non-compliance with RESPA in support of a claim for statutory damages); Allen v. United Fin. Mortgage Corp., 66 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (concluding that failure to plead pecuniary loss attributable to the violation of RESPA was fatal to the claim).

1   Section 2605(e)(1)(B)).

2          Plaintiff's First Amended Complaint fails to allege sufficient facts establishing a

3   statutory duty on the part of Fremont Bank and Federal National Mortgage Association, and a

4   violation thereof, in regards to the TILA statute.  (See First Am. Compl. ¶ 47.)  However,

5   although factual allegations in an opposition to a motion to dismiss are not to be considered in

6   evaluating the motion to dismiss, plaintiff's opposition alleges a violation of 12 C.F.R.

7   § 226.4(d)(1)(i), a regulation under the TILA statute.  (See Pl.'s Opp'n to Fin. Defs.' Mots. to

8   Dismiss at 18.)  Plaintiff contends that in connection with this regulation, "information regarding

9   Credit Life, Accident, Health, or Loss of Income Insurance" was not disclosed to him.  (Id.)

10  Section 226.4(d)(1)(i) provides:

11          (d) Insurance and debt cancellation and debt suspension coverage.

12          (1) Voluntary credit insurance premiums. Premiums for credit life,
            accident, health, or loss-of-income insurance may be excluded from the
13          finance charge if the following conditions are met:

14          (i) The insurance coverage is not required by the creditor, and this fact is
            disclosed in writing.
15
            (ii) The premium for the initial term of insurance coverage is disclosed in
16          writing. If the term of insurance is less than the term of the transaction, the
            term of insurance also shall be disclosed. The premium may be disclosed
17          on a unit-cost basis only in open-end credit transactions, closed-end credit
            transactions by mail or telephone under § 226.17(g), and certain
18          closed-end credit transactions involving an insurance plan that limits the
            total amount of indebtedness subject to coverage.
19
            (iii) The consumer signs or initials an affirmative written request for the
20          insurance after receiving the disclosures specified in this paragraph, except
            as provided in paragraph (d)(4) of this section. Any consumer in the
21          transaction may sign or initial the request.

22  12 C.F.R. § 226.4(d)(1)(i)-(iii).  Initially, it is unclear from the First Amended Complaint and

23  plaintiff's opposition how this regulation applies here.  Moreover, plaintiff has not alleged that

24  the premiums for the types of insurances identified in the regulation were excluded from the

25  finance charge in relation to his loan, which is a condition required for the disclosures identified

26  in Section 226.4(d)(1)(i).  Thus, plaintiff has not sufficiently alleged that either Fremont Bank

and Federal National Mortgage Association had a duty to disclose the information provided for in the regulation and, accordingly, plaintiff's negligence claim fails as to this specific alleged TILA violation.

For the reasons stated above, plaintiff's negligence per se claims should be dismissed for failure to state a claim.

c.   Wrongful Foreclosure Claim

As is the case with respect to T.D. Service Company, the success of plaintiff's wrongful foreclosure claim is contingent on the success of his other claims.  Because plaintiff has not successfully pled a plausible claim in any other respect, and failed to allege a tender of the entire indebtedness, his wrongful foreclosure claim fails.

C.   Plaintiff's Claims For Injunctive Relief, Cancellation, and A Constructive Trust As To All Defendants (Claims 3, 7 and 8)

1.   Injunctive Relief

Plaintiff's claim for injunctive relief seeks to enjoin the trustee's sale of his foreclosed property, which is alleged to have taken place on July 13, 2010.  It appears that this claim is a hold-over claim from plaintiff's original complaint, which was filed prior to the trustee's sale.  (See Compl., June 14, 2010, Dkt. No. 1.)  The undersigned recommends dismissal of this claim because: (1) injunctive relief is a remedy, not an independent claim, and (2) plaintiff's request for the particular injunction sought is moot.

As an initial matter, injunctive relief is a remedy that derives from the underlying claims, not an independent claim.  See, e.g., Lane v. Vitek Real Estate Indus. Group, 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010); Hafiz v. Greenpoint Mortgage Funding, Inc., 652 F. Supp. 2d 1039, 1049 (N.D. Cal. 2009); Schimsky v. U.S. Ofc. of Personnel Mgmt., 587 F. Supp. 2d 1161, 1168 (S.D. Cal. 2008); Cox Comm'n PCS, L.P. v. City of San Marcos, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002); accord Marlin v. Aimco Venezia, LLC, 154 Cal. App. 4th 154, 162, 64 Cal. Rptr. 3d 488, 494-95 (Ct. App. 2007).  For this reason alone, the court recommends

1  dismissal of plaintiff's "claim" for injunctive relief.

2          In any event, plaintiff's "claim" seeking to enjoin an act that has already been

3  completed is moot.  The trustee's sale occurred on July 13, 2010.  The court cannot prevent the

4  trustee's sale from occurring because it has already occurred.  Accordingly, the undersigned

5  recommends that plaintiff's claim for injunctive relief be dismissed with prejudice.[24]

6                  2.         Cancellation of Instruments

7          Plaintiff's seventh claim seeks cancellation of "any instruments that result in a

8  termination of ownership as a product of the foreclosure and July 13, 2010, trustee's sale."[25]

9  (First Am. Compl. ¶ 60.)  Plaintiff's request for cancellation is premised on the other acts or

10  omissions alleged elsewhere in plaintiff's First Amended Complaint.  (See id. ¶ 61 ("Because of

11  the misconduct and/or violations, as stated herein . . ., any instruments depriving plaintiff and his

12  wife of their ownership in the subject property should be void and cancelled.").)  Plaintiff does

13  not expressly identify which instruments are the subject of this claim.

14          The undersigned recommends the dismissal of plaintiff's claim for cancellation as

15  to all defendants.  First, district courts have concluded that cancellation of an instrument such as

16  a deed is an equitable remedy and not an independent basis for liability.  See, e.g., Gwin v. Pac.

17  Coast Fin. Servs., No. 09cv2734 BTM (BLM), 2010 WL 1691567, at *4 (S.D. Cal. Apr. 23,

18  2010) (unpublished) ("Cancellation is an equitable remedy."); Qureshi v. Countrywide Home

19  Loans, Inc., No. C 09-4198 SBA, 2010 WL 841669, at *7 (N.D. Cal. Mar. 10, 2010)

20  (unpublished) ("A request to cancel a trustee's deed is a request for a remedy as opposed to an

21

22          [24]  Plaintiff also seeks injunctive relief in his "prayer" section that essentially seeks to set
aside the trustee's sale and/or prevent any eviction of plaintiff and his wife from the property.  (See
23  First Am. Compl. at 16.)  That requested relief is plainly dependent on plaintiff's remaining claims.
Accordingly, such relief rises or falls with plaintiff's remaining claims.
24

25          [25]  California Civil Code § 3412 provides: "A written instrument, in respect to which there
is a reasonable apprehension that if left outstanding it may cause serious injury to a person against
26  whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered
up or canceled."

1    independent cause of action.") (citing <u>Porter v. Superior Court</u>, 73 Cal. App. 3d 793, 799, 141

2    Cal. Rptr. 59 (Ct. App. 1977)); <u>Yazdanpanah v. Sacramento Valley Mortgage Group</u>, No. C

3    09-02024 SBA, 2009 WL 4573381, at *6 (N.D. Cal. Dec. 1, 2009) (unpublished) ("A request to

4    cancel the trustee's deed is 'dependent upon a substantive basis for liability, [and it has] no

5    separate viability.'") (modification in original) (quoting <u>Glue-Fold, Inc. v. Slautterback Corp.</u>, 82

6    Cal. App. 4th 1018, 1023 n.3, 98 Cal. Rptr. 2d 661, 663 n.3 (Ct. App. 2000)).  Moreover,

7    plaintiff has pled his claim for cancellation in a manner such that the success of his cancellation

8    claim is entirely contingent on the success of his other claims.  Thus, because the undersigned

9    has concluded that plaintiff's other claims for relief should be dismissed, plaintiff's claim for

10   cancellation should be dismissed as well.[26]  <u>See</u> <u>Sanchez v. U.S. Bank, N.A.</u>, No. C 09-04506 SI,

11   2010 WL 670632, at *5 (N.D. Cal. Feb. 22, 2010) (unpublished) (dismissing plaintiff's claim for

12   cancellation where allegations in support of that claim were the same allegations related to the

13   claims that the court had determined failed to state a claim); <u>accord</u> <u>Razawi v. FDIC</u>, No.

14   2:09-cv-00985-MCE-JFM, 2009 WL 2914120, at *7 (E.D. Cal. Sept. 9, 2009) (unpublished).

15             3.      <u>Imposition of A Constructive Trust</u>

16             Plaintiff's eighth claim for relief seeks the imposition of a constructive trust on

17   the grounds that T.D. Service Co., Fremont Bank, and Federal National Mortgage Association

18   were "unjustly enriched" at plaintiff's expense.  (First Am. Compl. ¶ 63.)  Although this claim is

19   alleged against "All Defendants," plaintiff alleges no specific facts with respect to the acts of the

20   United States in his claim for a constructive trust.  Plaintiff does not elaborate on the precise

21   grounds supporting the imposition of a constructive trust; instead, he refers to "the acts and/or

22   omissions as set forth herein."  (<u>Id</u>.)

23             Under California law, "[a] constructive trust . . . is an equitable *remedy*, not a

24   ─────────────────────

25   [26]   As to the United States, plaintiff's claim for cancellation should be dismissed for the
     additional reason that plaintiff has not sufficiently alleged or provided documents establishing that
     the United States or a federal agency is or was a party to a void or voidable contract that might be
26   subject to cancellation.

1  substantive claim for relief." <u>PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil &</u>

2  <u>Shapiro, LLP</u>, 150 Cal. App. 4th  384, 398, 58 Cal. Rptr. 3d 516, 527 (Ct. App. 2007); <u>accord</u>

3  <u>Batt v. City & County of San Francisco</u>, 155 Cal. App. 4th 65, 82, 65 Cal. Rptr. 3d 716, 728 (Ct.

4  App. 2007) (stating that a constructive trust is not an independent cause of action); <u>Glue-Fold,</u>

5  <u>Inc.</u>, 82 Cal. App. 4th at 1023 n.23, 98 Cal. Rptr. 2d at 663 n.3 (same); <u>see also</u> <u>F.T.C. v.</u>

6  <u>Network Servs. Depot, Inc.</u>, 617 F.3d 1127, 1141 (9th Cir. 2010) ("Constructive trust is a form of

7  remedy that is flexibly fashioned in equity to provide relief where a balancing of interests in the

8  context of a particular case seems to call for it" (citation and quotation marks omitted).); <u>Monday</u>

9  <u>v. Saxon Mortgage Servs., Inc.</u>, No. CIV. 2:10-989 WBS KJM, 2010 WL 2574080, at *6 (E.D.

10  Cal. June 25, 2010) (unpublished).  "A plaintiff seeking imposition of a constructive trust must

11  show: (1) the existence of a res (property or some interest in property); (2) the right to that res;

12  and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it."

13  <u>Mattel, Inc. v. MGA Entm't, Inc.</u>, 616 F.3d 904, 909 (9th Cir. 2010) (citing <u>Communist Party of</u>

14  <u>U.S. v. 522 Valencia, Inc.</u>, 35 Cal. App. 4th 980, 41 Cal. Rptr. 2d 618, 623-24 (Ct. App. 1995)).

15        Based on the foregoing, the undersigned recommends dismissal of plaintiff's

16  eighth claim for relief with prejudice because it is not an independent claim.  To the extent that

17  plaintiff has sought relief in the form of a constructive trust in the "prayer" portion of his First

18  Amended Complaint (First Am. Compl. at 16:19-22), that request is permissible, but is entirely

19  contingent on the success of his other claims that would purport to establish some unjust

20  enrichment to defendants.

21        D.   <u>Leave To Amend Would Be Futile</u>

22        For the reasons stated above, the undersigned recommends that all claims against

23  all defendants be dismissed with prejudice.  Nothing in plaintiff's operative complaint or other

24  submissions to this court persuade the undersigned that plaintiff could amend his First Amended

25

26

1   Complaint to state claim on which relief can be granted.[27]

2   Moreover, dismissal of plaintiff's claims with prejudice is warranted because of

3   plaintiff's demonstrated unwillingness to assist the court in finding a reason to provide leave to

4   amend.  The undersigned held a hearing on November 18, 2010, to determine whether plaintiff

5   should be granted leave to amend as to the Financial Defendants' motions to dismiss.  The

6   undersigned asked plaintiff several questions for the express purpose of ascertaining whether

7   leave should be granted and relayed this purpose to plaintiff at the hearing.  Plaintiff, however,

8   only responded that he considered these questions as an "interrogation" of which plaintiff was

9   given no advance notice.  Therefore, plaintiff refused to answer any of the court's questions.  As

10  the undersigned repeatedly sought to make clear to plaintiff, these questions were intended to

11  assist plaintiff.  Nevertheless, plaintiff remained unconvinced, and the hearing ended with

12  plaintiff having provided no responses to the court's questions and instead having repeatedly

13  yelled at the undersigned.  Plaintiff's refusal to assist the court in determining whether to grant

14  leave to amend further supports dismissal with prejudice.

15  V.     CONCLUSION

16         For the reasons stated above, IT IS HEREBY ORDERED that:

17         1.      T.D. Service Company's request for judicial notice is granted.

18         2.      Federal National Mortgage Association and Fremont Bank's request for

19  judicial notice is granted.

20         3.      Plaintiff's request for judicial notice is granted, as narrowed above.

21         It is FURTHER RECOMMENDED that:

22         1.      The motion to dismiss plaintiff's First Amended Complaint filed by

23  defendant T.D. Service Company (Dkt. No. 21) be granted.

24  _____

25  [27] In that regard, the undersigned has reviewed plaintiff's purported "Second First Amended
    Complaint" and his purported "Third First Amended Complaint," and they do not cure any of the
26  deficiencies discussed herein.

1      2.      The motion to dismiss plaintiff's First Amended Complaint filed by

2  defendants Fremont Bank and Federal National Mortgage Corporation (Dkt. No. 25) be granted.

3      3.      The motion to dismiss plaintiff's First Amended Complaint filed by

4  defendant United States of America (Dkt. No. 56), which the court construes a motion for

5  judgment on the pleadings in part, be granted.

6      4.      Plaintiff's First Amended Complaint (Dkt. No. 20) be dismissed with

7  prejudice as to all defendants.

8      5.      This case be closed and all dates in this matter be vacated.

9          These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

11  days after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

13  Such a document should be captioned "Objections to Magistrate Judge's Findings and

14  Recommendations."  Any response to the objections shall be filed with the court and served on

15  all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

16  Failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

18  1153, 1156-57 (9th Cir. 1991).

19          IT IS SO ORDERED AND RECOMMENDED.

20  DATED:  January 20, 2011

21

22

23

24                                KENDALL J. NEWMAN
                                  UNITED STATES MAGISTRATE JUDGE
25

26